Filed 8/5/26  Romero v. Gopher Media CA4/1
## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| MELISSA ROMERO,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>GOPHER MEDIA LLC et al.,<br><br>    Defendants and Appellants. | D086508<br><br><br><br>(Super. Ct. No. 37-2023-00041047-CU-OE-CTL) |

APPEAL from an order of the Superior Court of San Diego County, Wendy M. Behan, Judge.  Affirmed.

Munck Wilson Mandala, Anton N. Handal and Marina V. Bogorad; Doctor Multimedia and Pamela C. Chalk for Defendants and Appellants.

Cantor Law and Zachary Cantor; Arendsen Braddock and Joshua C. Braddock for Plaintiff and Respondent.

Melissa Romero sued her former employer, Defendants Gopher Media LLC dba Doctor Multimedia and Prashanth Murthy, for causes of action related to her employment and termination.  In discovery, Defendants produced a PDF document dated November 10, 2021 that reflects Murthy's account of a meeting that day between him and Romero, and which Defendants identified as "evidencing" grounds for terminating Romero.  We

will refer to that document as the meeting summary. Romero asked Defendants to produce the meeting summary in its original format with metadata. After Defendants objected, claiming attorney-client privilege and attorney work product, Romero moved to compel its production and sought sanctions. The trial court ultimately granted the motions and ordered Defendants to pay $7,870.41 in discovery sanctions to Romero. Defendants appeal the sanctions order.

First, we deny Romero's motion to dismiss the portions of the appeal addressing the discovery orders contained in the same ruling as the sanctions order. We may review those discovery orders to the extent they "necessarily affect[] the . . . order appealed from." (Code Civ. Proc., § 906.) Here, the discovery orders related to the meeting summary's metadata are the basis for the sanctions order, so we must assess the reasonableness of Defendants' objections to producing that discovery. And because Defendants dropped their arguments about the other discovery order contained in the same ruling after Romero confirmed it was not a basis for the sanctions, nothing non-appealable remains to be dismissed.

Second, Defendants have not persuaded us their opposition to producing the meeting summary's metadata was substantially justified on attorney-client privilege and attorney work product grounds. Defendants claim the metadata contains "drafts of the final document that reveal confidential communications" between Murthy and Defendants' counsel. Because Defendants fail to provide any record support for this factual assertion, they have not convinced us their opposition was well taken. Meanwhile, the trial court's finding that the metadata does not contain such privileged or protected material is supported by substantial evidence. As a result, the trial court did not abuse its discretion in ordering sanctions.

2

Third, we decline Romero's request to impose appellate sanctions against Defendants. Appellate sanctions are reserved for only the most egregious conduct, not simply an unmeritorious appeal.

We therefore affirm.

## I.

During discovery, Defendants produced the meeting summary, which was dated "11/10/21" and written in the first person and present tense from Murthy's perspective.

> 11/10/21
> Melissa asked to meet with me in private today after work.
>
> Melissa was very upset but it was difficult to understand what she was saying or what the issue was. I did not understand what was trying to say. Melissa was crying, blowing her nose, congested, and sniffly. She was very upset and emotional during this conversation. It was unclear why.
>
> During the meeting, Melissa made unwanted sexual advances towards me. I quickly moved away and immediately ended the meeting to avoid any further inappropriate conduct by Melissa. I told Melissa it was best if we put everything she was trying to say in writing and that she could take some time off to gather herself, collect her thoughts, and email me what she was trying to say.
>
> Melissa made me very uncomfortable during the meeting as a result of her unwanted advances toward me. I feel harassed and embarrassed by her unprofessional conduct. I recommend that we terminate her immediately for her unprofessional behavior toward me.

Defendants identified the meeting summary in response to a request for admission about documents "evidencing that the reason [Defendants] terminated" Romero was based on their allegation that "she inappropriately touched or attempted to kiss or sexually harass Defendant MURTHY during a November 10, 2021 meeting."

Romero sought the meeting summary in its original format with metadata "to determine the origin of this document." The request defined metadata to mean "data that serves to provide context or additional information about the document, e.g.: information about the location the document is stored, the date it was created, the last date it was

edited/modified, the number of revisions, the title, subject, author, typeface, enhancements, and size of the text; also describes the conditions under which the data stored in a database was acquired, its accuracy, date, time, method of compilation and processing, etc."

Defendants objected, saying they would "not comply with the request," in part because they claimed the request sought information that is "attorney-client/attorney work product privileged." Instead, Defendants produced what appears to be a screenshot of the "Document Properties" for a PDF file titled "romero.pdf" that was created in January 2024. In response, Romero moved to compel production and sought sanctions to compensate for the attorney fees and costs associated with the motions.

In opposing the motions to compel, Defendants claimed "[a]ny metadata and/or [original] format of the [meeting summary] contains both attorney-client privileged communications and/or is based thereon as well as contains the legal advice, conclusions, thoughts and/or impressions of Defendants' counsel." Defendants provided two declarations that shed more light on the timing and circumstances of the meeting summary's creation. Their counsel attested that she "helped Murthy create the document [t]hat eventually became the [meeting summary] after this case began," years after the November 2021 meeting. It was based, "in part," on her "attorney-client confidential conversations and emails Mr. Murthy sent [counsel] wherein he conveyed what happened to him." She and Murthy "decided that [they] needed to put the [meeting summary] into [Romero]'s personnel file and produce it in discovery." Murthy submitted a declaration confirming the same information.

Following a hearing, the court agreed with Romero that the meeting summary's metadata "will not reveal legal advice, client confidences,

litigation strategy, legal theories, attorney work product, notes, comments, communications, counsel impressions, or counsel conclusions" like Defendants claimed. The court further found that, "[b]y producing [the meeting summary] and relying on it as evidence to support certain claims, any privilege to the document's metadata is waived, especially considering the relevant questions about the authenticity of the document, the date it was created, the purpose of the document, and how it has been used." Consequently, the court granted the related motions to compel and imposed $7,870.41 in sanctions against Defendants "for necessitating these motions."

## II.

## A.

Romero moves to dismiss the appeal "to the extent" it asks us to review the discovery orders issued at the same time as the sanctions order. Defendants oppose because assessing the propriety of the sanctions order "necessarily requires" us to examine "the legal and factual bases for [Defendants'] opposition to the discovery motions—not because [Defendants] seek to overturn the discovery orders themselves, but because the reasonableness of [their] position is the sole issue on appeal." We deny Romero's motion.

An order imposing monetary discovery sanctions is immediately appealable if the amount exceeds $5,000, as here. (Code Civ. Proc., § 904.1(a)(12).)

Romero concedes the appealability of the sanctions order and that the motion to compel production of the meeting summary's metadata is "related." But because discovery orders are not themselves appealable, she asks us to dismiss the appeal to the extent Defendants seek review of the discovery orders.

5

Although the discovery orders are not themselves directly appealable, we may review them to the extent they "necessarily affect[] the . . . order appealed from." (§ 906.) Here, Romero sought monetary sanctions for the expenses and fees incurred "in connection with" the motions to compel the meeting summary in original format with metadata and in an amount that corresponded directly with the hours of work and fees expended preparing and filing those motions. As a result, our review of the monetary sanctions necessarily encompasses the propriety of granting the relevant motions to compel. (*Mileikowsky v. Tenet Healthsystem* (2005) 128 Cal.App.4th 262, 264, 276.) Consequently, we deny the motion to dismiss.

In their opening brief, Defendants also discuss the portion of the trial court's order addressing a motion to compel production of personnel records because the order assessed sanctions "for necessitating these motions." Defendants, however, have since abandoned their arguments related to that portion of the court's order once Romero confirmed that she "did not seek sanctions in connection with this motion." (Underlining omitted.) As a result, nothing related to that discovery order remains to be dismissed, and we do not need to address it any further.

B.

Defendants argue they were substantially justified in opposing production of the meeting summary in its original format with metadata on attorney-client privilege and attorney work product grounds. We disagree, as Defendants have not identified any factual support for their claims of privilege and work product protection.

As relevant here, a court "shall impose a monetary sanction" against anyone who unsuccessfully opposes a motion to compel "unless it finds that the one subject to the sanction acted with substantial justification."

6

(§ 2031.310(h).) "Substantial justification" means "well[-]grounded in both law and fact." (*Doe v. United States Swimming, Inc.* (2011) 200 Cal.App.4th 1424, 1434.) The losing party bears the burden to prove substantial justification. (*Id.* at p. 1435.)

We review a discovery sanction ruling for abuse of discretion "and resolve all evidentiary conflicts most favorably to the trial court's ruling." (*Williams v. Russ* (2008) 167 Cal.App.4th 1215, 1224.) We presume the order is correct, so appellants must "affirmatively demonstrate error." (*Ibid.*) "[W]here the evidence is in conflict, we will affirm the trial court's findings." (*Ibid.*)

Defendants claim they were substantially justified in asserting attorney-client privilege and attorney work product over the meeting summary's original format and metadata. "The party claiming the privilege has the burden of establishing the preliminary facts necessary to support its exercise." (*Costco Wholesale Corp. v. Superior Court* (2009) 47 Cal.4th 725, 733; *Coito v. Superior Court* (2012) 54 Cal.4th 480, 499-500 [same for attorney work product].) Defendants stumble at this first step. Defendants never identify any factual, record support for their assertion that the meeting summary's original format and metadata contain "drafts of the final document that reveal confidential communications forming the results of the investigation memorialized in the [meeting summary]." Defendants quote a federal case describing "'several distinct types'" of metadata, including substantive metadata that "'reflects modifications to a document, such as prior edits or editorial comments.'" (*Aguilar v. Immigration and Customs Enforcement* (S.D.N.Y. 2008) 255 F.R.D. 350, 354.) But without identifying any *facts* indicating the meeting summary contains this type of metadata, Defendants fail to persuade us that their opposition to the relevant motions

7

to compel was "well[-]grounded in *both* law *and fact*." (*Doe*, 200 Cal.App.4th at p. 1434, italics added.)

In its ruling, the trial court agreed instead with Romero that "the metadata will not reveal legal advice, client confidences, litigation strategy, legal theories, attorney work product, notes, comments, communications, counsel impressions, or counsel conclusions like Defendant[s] state[]." Substantial evidence supports this finding. At the hearing, Defendants' counsel told the court she did not know what "the metadata of the original documents" "means." She explained she was "confused as to what it is that is being looked for. Drafts? My e-mails with Mr. Murthy? I mean, that's – it's very confusing to me and I don't understand." Defendants' counsel repeatedly stated she was "not a technical person" and was "confused" as to what the production request sought. Counsel's admitted lack of understanding of metadata at least contradicts if not entirely undermines her earlier declaration—which Defendants never cite in their appellate briefing— that "[t]he metadata in question contains [her] thoughts, conclusions, impressions, comments, notes, and/or client discussions therein." And "where the evidence is in conflict, we will affirm the trial court's findings." (*Williams*, 167 Cal.App.4th at p. 1224.)

From the court's finding that the meeting summary's metadata will not reveal any privileged communications or protected work product flows the implied finding that Defendants' opposition was not substantially justified. Defendants have failed to convince us otherwise on appeal. We therefore affirm the sanctions order.

Because we affirm based on Defendants not identifying any factual support for their claims of privilege and work product protection, we do not need to address the parties' other arguments.

8

C.

Romero asks us to award her appellate sanctions against Defendants' counsel "for filing a frivolous appeal." We deny the request.

Sanctions for a frivolous appeal are appropriate only where either the appeal "is prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment—or when it indisputably has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit." (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650.) "An appeal that is simply without merit is *not* by definition frivolous and should not incur sanctions." (*Ibid.*) Our Supreme Court has cautioned that "the punishment [of appellate sanctions] should be used most sparingly to deter only the most egregious conduct." (*Id.* at p. 651.)

Although Defendants' arguments are unconvincing, we are not persuaded their appeal meets the high bar of frivolousness that would warrant sanctions. We thus decline to impose appellate sanctions.

III.

We affirm the sanctions order. Romero is entitled to recover her appellate costs. (Cal. Rules of Court, rule 8.278(a)(1).)


CASTILLO, J.

WE CONCUR:


BUCHANAN, Acting P. J.


KELETY, J.

9